Curia, per

Withers, J.
Two questions, argued or alluded to, we shall lay out of this case : one in relation to the count in trover, for no matter what may be the true doctrine as to what will amount to a conversion, the trial did not turn on any thing but the counts in case. The other was suggested by the counsel for plaintiff, to wit: that defendant was liable with or without negligence, and, therefore, independent of any standard of caution or diligence. That need not be considered on the present occasion.
We shall regard the case as resting upon the general doctrine that renders a party liable, in case, who, in the course of a lawful avocation or business, has, through negligence, but not wil- *476 fully, -entailed an injury upon the personal property of another not in- default, even to the loss of that property. It has been argued', to be sure, that the owner of the slave was himself in default, since he should have kept him at home: and further, that he had so educated him in port and manners, as to give him the arts of deception, and the semblance of a freeman. The facts shew no more than that he had hired his slave to the keeper of a hotel in Charleston, and in this we see nothing-blameworthy in law : that his slave was, in fact, artful enough to delude the defendant on the occasion ; but there is no evidence that, the plaintiff had designedly contributed to the deceptive qualities of the negro, for the purpose of misleading the defendant or any body else. That there was negligence, in some degree, on the part o'f the defendant or his representative, Baker, we do not doubt: the question is, were the jury misled by any thing said to them by the presiding Judge, as to the standard of care and caution which the law exacted on the occasion 1
General definitions, on this subject, are as mere skeletons, unless the whole circumstances, to which they are made to apply, are considered; for, otherwise, neither he who utters them can be understood, nor the sense in which the jury perceived them be appreciated. The argument at the bar has illustrated the remark. It was directed to the words “utmost care and vigilance and we have heard that, in a critical sense, this may mean all that possibly could have been ascertained in relation to the slave, Morris. It is thence argued (assuming such to have been the sense intended by the presiding Judge, and the apprehension adopted by the jury,) that the defendant could, by possible diligence, actuated by an unsocial and impracticable distrust, have stripped Morris of his disguises by discrediting the man, who, with genteel appearance, became sponsor for him, and the genuineness of his free papers, and pursuing the inquiry up to the point of requiring the personal assurance of the Magistrate in North Carolina that the evidence of freedom was bona fide. Now if we concede that the law does not require such strictness, such painful investigation, was any such rule exacted from the *477 Bench, or so understood by the jury ? . They had been told, before the words in question were used, that the defendant must be held to “ proper vigilance, care and caution,” and afterwards to “ necessary precaution,” and the several phrases were used in reference to various supposed aspects of the case. One of those aspects supposed that the defendant knew, if he transported the slave to Philadelphia, he would place him as iar beyond the reach of recovery as if he had been taken to Great Britain. Supposing the defendant knew this, the jury were told that the master of a vessel should use the utmost care and vigilance to see that, while he was contracting to carry a negro, he should not thus transport a slave beyond the chance of recovery. From the connection in which this language was used, the imminent hazard of irreparable injury to some slave owner, which the circumstances supposed created, should not the caution, the diligent inquiry, be increased in proportion to the danger ? It is tantamount to saying that the same line of conduct that, in certain circumstances, might import ordinary negligence, or even none at all, would, in others, import the grossest. To borrow the illustration of the counsel: if he hired a slave, professing to be free, and without some inquiry, to labor in his garden, there would be a certain degree of circumspection wanting ; but if he conducted him to New York, how gross would be the negligence? In the inverse ratio ought to be the vigilance required in the respective cases. If a man takes the cars at Columbia for Charleston, in the bustle which attends the eve of departure, and directs on board the slave of another, but claiming him as his own, (which occurred as a leading characteristic in Sill’s case,*) the incident would be little calculated to awaken suspicion in the mind of the most cautious: the danger of loss to the owner, whoever he might be, would be little likely. But if the same man were to take passage for himself and his slave for New York or England, the fact that he claimed him as a slave would rouse the most lively suspicion of trick or crime, of deception of some description. If no reference could be made to some one, *478 known and to be confided in, suspicion would be strengthened. As the plot thickened, so should the interest and attention become intense. One circumstance unexplained, in a case where the hazard of perpetrating injury is always great, one question answered untruly, should beget a vigilance increasing at every step of the investigation: and in the circumstances of this case, we do think that nothing said by the Circuit Judge was too strong, when taken with the context. So considered, as every portion of every charge ought to be, neither the law nor the very right of the case was violated when the jury were told, if you view the case thus, the “ utmost care and vigilance” were due from defendant; that is, the utmost which, in like circumstances, you would exact from a prudent man engaged in a business very hazardous to other people’s rights of property. We think such instruction warranted, when we observe that a negro presented himself as a passenger on the Columbus, the day before she sailed, bound from Charleston to Philadelphia; no one came to vouch his pretension to freedom ; he was thereupon rejected ; he produced papers, of North Carolina origin apparently, certifying his freedom; this was unsatisfactory; a white man was required to support the papers and the negro’s identity; one was produced ; his name was neither registered nor demanded, but both he and the papers, if they told the truth, shewed the applicant to be here in violation of law, since he was represented as a free negro from another State, and, therefore, inhibited ingress here; and yet there was no further reference demanded, nor en-quiry made. We cannot but think that such a case, under a charge of mildness and favor towards the defendant, must have produced a verdict against him.
The remaining point is founded on the amount of damages. On that score we cannot perceive just objection to the verdict. If a plaintiif’s legal right has been violated, the law infers some damage, and he is entitled to the verdict. Ellis has shewn, in evidence, that his slave has been lost to him; that his value and the value of his hire, are equal to the amount found by the jury. *479 Having connected this damage with the act of the defendant, legally tortious, his right to his verdict is vindicated.
The motion is consequently refused.
O’Neall, EvaNs, Waedlav, Frost and Whitner, JJ., concurred.

Motion refused.

 Ante, p. 154.